# United States Court of Appeals
### *for the*
# Eleventh Circuit

_____

CASE NO. 20-10539-BB
_____

THOMAS IRELAND
Plaintiff/Appellant,

v.

HON. BILL PRUMMELL, as Sheriff of Charlotte County,
CORIZON LLC, TABBATHA CARTER, BRANDON SWARTZENTRUBER,
MICHAEL WILES, ADAMAR GONZALEZ FIGUEROA, ZACKARY
HEAVENER, ROBERT SLEDZINSKI, ALAN SCHWOCHO, WILLIAM
GARLICK, and ALBERT BURROWS, Individually,
Defendants/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION (2:17cv468-PAM-MRM)

_____

## APPELLANT'S PETITION FOR REHEARING
## AND REHEARING EN BANC

_____

James V. Cook
*Counsel of Record*
Law Office of James Cook
314 West Jefferson St.
Tallahassee, FL 32301
(850) 561-0836 (facsimile)
cookjv@gmail.com
For Appellant Ireland

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Eleventh Circuit Rule 26.1-1, the following is an alphabetical list of persons and entities with any known interest in the outcome of this appeal:

1. Barranco, Summer M., Esquire, Counsel for Defendants/Appellees Prummell, Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick and Burrows;

2. Bracy, Margaret, Defendant/Appellee;

3. Burrows, Albert, Defendant/Appellee;

4. Carter, Tabbatha,Defendant/Appellee;

5. Cook, James V., Counsel for Plaintiff/Appellant;

6. Corizon Health, Inc. a/k/a Corizon, LLC, Defendant/Appellee;

7. Estate of Gregg T. Ireland;

8. Garlick, William, Defendant/Appellee;

9. Giuffreda, Richard A., Counsel for Defendants/Appellees Prummell, Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick and Burrows;

10. Gonzalez-Figueora, Adamar, Defendant/Appellee;

11. Heavener, Zackary, Defendant/Appellee;

12. Ireland, Thomas as Personal Representative, Plaintiff/Appellant;

13. Law Offices of James Cook, Counsel for Plaintiff/Appellant;

14. Linn, David R., Counsel for Plaintiff/Appellant;

15. Prummell, William, Sheriff of Charlotte County, Defendant/Appellee;

16. Purdy, Jolly, Giuffreda, Barranco & Jisa, P.A., Counsel for Defendants/Appellees Prummell, Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick and Burrows;

17. Schwocho, Alan, Defendant/Appellee;

18. Sledzinski, Robert, Defendant/Appellee;

19. Swartzentruber, Brandon, Defendant/Appellee;

20. The Toomey Law Firm, LLC, Counsel for Defendants/Appellees Corizon, Bracy, Heavener and Gonzalez-Figueroa;

21. Toomey, Gregg A., Counsel for Defendants/Appellees Corizon, Bracy, Heavener and Gonzalez-Figueroa;

22. Wiles, Michael, Defendant/Appellee.

## **Statement of Issues Asserted to Merit En Banc Consideration**

(A)    *I express a belief based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this circuit and consideration by the full court is necessary to secure and maintain uniformity of decisions in this court*:

- *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

/s/James V. Cook, Attorney of Record for Appellant

## TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT ....... ii

STATEMENT OF ISSUES ASSERTED TO MERIT EN BANC
CONSIDERATION ....... iv

TABLE OF CONTENTS ....... v

TABLE OF CITATIONS ....... vi

STATEMENT OF THE ISSUES ....... 1

COURSE OF PROCEEDINGS BELOW ....... 2

STATEMENT OF THE FACTS ....... 3

ARGUMENT ....... 7

   I.    The U.S. Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. ....... 7
          389 (2015) should be read to impose an "objectively
          unreasonable" standard on deliberate indifference claims by
          pretrial detainees.

   II.   Even under the subjective fault analysis, the panel erred in ....... 14
          affirming judgment on the deliberate indifference claims for
          Dr. Gonzalez's failure to administer prescribed medication.

   III.  The panel committed error by weighing evidence on clearly ....... 16
          established rights to be free from excessive force where there is
          a genuine dispute as to material facts.

CONCLUSION ....... 17

CERTIFICATE OF SERVICE ....... 17

PANEL OPINION Addendum

## **TABLE OF CITATIONS**

| Cases | Page |
|---|---|
| *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) | 15 |
| *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242 (1986) | 17 |
| *Bell v. Wolfish*, 441 U.S. 520 (1979) | 9, 10, 11, |
| *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) | 11 |
| *Dahl v. Holley*, 312 F.3d 1228 (11th Cir. 2002) | 17 |
| *Dang v. Sheriff*, 871 F.3d 1272 (11th Cir. 2017) | 1, 10 |
| *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) | 17 |
| *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) | 11 |
| *Engelleiter v. Brevard Cnty. Sheriff's Dep't*, 290 F. Supp. 2d 1300 (M.D. Fla. 2003) | 15 |
| *Estelle v. Gamble*, 429 U.S. 97 (1976) | 8, 15 |
| *Farmer v. Brennan*, 511 U.S. 825 (1994) | 8, 13, |
| *Gilmore v. Hodges,* 738 F.3d 266 (11th Cir. 2013) | 10 |
| *Hill v. Dekalb Reg'l Youth Det. Ctr. ,* 40 F.3d 1176 (11th Cir. 1994) | 14 |
| *Hudson  v.  McMillian*,  503  U.S.  1  (1992) | 12 |
| *Johnson v. City of Bessemer*, 741 Fed. Appx. 694 (11th Cir. 2018) | 1 |
| *Johnson v. City of Bessemer*, 741 Fed.Appx. 694 (11th Cir. 2018) | 10 |
| *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) | 1, 2, 7, 9, 10, 11, 12, 13, |
| *Kister v. Quality Corr. Health Care*, No. 5:16-cv-1406-KOB-HNJ, 2018 WL 6174693 (N.D. Ala. Mar. 12, 2018) | 15 |
| *Miranda v. Cnty. of Lake*, 900 F.3d 335 (7th Cir. 2018) | 11, 12, 13, |
| *O'Rourke v. Hayes*, 378 F.3d 1201 (11th Cir. 2004) | 17 |

*Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009)                          17

*Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997).                          17

*State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947)       8

*United States v. Marte*, 356 F.3d 1336 (11th Cir. 2004).                   14

*Whitley v. Albers*, 475 U.S. 312 (1986)                                    8, 12,

*Wilson v. Seiter*, 501 U.S. 294 (1991)                                     8

**Constitution**

8th Amendment to the U.S. Constitution                                    12

14th Amendment to the U.S. Constitution                                   10

**Statute**

42 U.S.C. § 1983                                                            2

**Rules**

Fed. R. App. P. 32                                                         18

Fed. R. App. P. 35                                                         18

**Other**

BLACK'S LAW DICTIONARY (11th ed. 2019)                                      8

## STATEMENT OF THE ISSUES

A.    Whether, in light of the decision of the U.S. Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), a constitutional claim of failure to treat by a pretrial detainee against a jail official requires the Appellant to prove that the jail official subjectively understood the risk of harm to the detainee although the act or omission was reckless, and the risk was obvious.

B.    Whether the decision of the panel comports with *Kingsley*, where a jury could find from competent evidence the use of force against Gregory Ireland was objectively unreasonable.

*Kingsley* clearly requires an objective standard for use-of-force claims by pretrial detainees. But after *Kingsley*, federal circuits have divided on whether the holding extends to pretrial failure to treat claims. The result of *Kingsley* is disharmony—courts have split over its application creating inter- and intra-circuit inconsistency. Panels in this Circuit have considered the extension of *Kingsley* standard to failure to treat claims. *See Dang v. Sheriff*, 871 F.3d 1272 (11th Cir. 2017); *Johnson v. City of Bessemer*, 741 Fed. Appx. 694 (11th Cir. 2018) (per curiam). But their conclusion—that *Kingsley* is not "squarely on point with and does not actually abrogate or directly conflict with" the Court's prior precedent—is flawed and should be reconsidered. *Dang*, 871 F.3d at 1279 n.2. Even if *Kingsley*

is not extended, the claim against Dr. Gonzalez for failure to administer prescribed medication should have survived summary judgment.

Further, the panel improperly holds—in an admitted "close[] call"— that the use of force against Ireland for the described "second time period" was not objectively unreasonable under the *Kingsley* standard. (Op. at 42). As explained below, there is a dispute sufficient that the factfinder should make this call, not the Court.

## COURSE OF PROCEEDINGS BELOW

This case was brought under 42 U.S.C. § 1983 and the Florida Wrongful Death Act on August 21, 2017, in the Middle District of Florida, Ft. Myers Division. (ECF 1). After unsuccessfully moving to dismiss the complaint, Defendants filed motions for summary judgment on November 1, 2019. (ECF 84, 85, 86). On January 23, 2020, the district court granted summary judgment for defendants—the federal 42 U.S.C. § 1983 counts against Corizon, the Sheriff and the individual appellees, and the two separate state-law wrongful death negligence counts against Corizon and the Sheriff. (ECF 135). On the same date, the district court entered final judgment for Appellees. (ECF 136). On February 11, 2020, Plaintiff timely filed a Notice of Appeal. (ECF 138).

## STATEMENT OF THE FACTS

In the early hours of August 22, 2015, Gregg Ireland was arrested for driving under the influence of alcohol. At booking, he blew .314—nearly four times the legal limit. (Op. at 4). Ireland was taken to Charlotte Regional Medical Center for evaluation that morning and was diagnosed with hypokalemia, a low blood potassium level associated with alcohol withdrawal that can result in arrhythmia and tachycardia. (ECF 86-18 at 30:13-31:1). Before being cleared to return to jail, Ireland was given a dose of potassium chloride and prescribed potassium chloride tablets, to be taken every 12 hours for the next 15 days, with orders to see a doctor the next day. (ECF 83-1 at 7).

Ireland was placed in a monitored medical wing. (Op. at 5). Dr. Adamar Gonzalez, the on-call doctor, who had not seen Ireland or reviewed his file, was aware the hospital prescribed medication, but told medical staff not to administer it pursuant to Corizon's policy not to honor outside prescriptions. (ECF 83-2 at 12; Op. at 5). Ireland never received any medication at the jail. (ECF 86-18 at 32:2-16).

By Sunday evening, August 23, Ireland began to behave erratically. (Op. at 5). Nicole Gruca, a detainee in a nearby cell, heard an officer tell Ireland, "Go ahead, please bang on the door. Give me a reason." "This is the night to try me!" (ECF 95-5 at 7). Nearby detainee Crystal Hewitt said that before she fell asleep

3

Ireland started to "freak out." About four hours later, he started "freaking out" again and woke her up. (95-13 at 3). Hours later—a little over 48 hours after his arrest—Ireland's cellmate accused Ireland of splashing water on him. (Op. at 6). Another detainee—Lisa James—heard Ireland shout "I need some medicine because I'm going through DTs." (ECF 95-6 at 2) and heard officers say, "get on your knees." (*Id.* at 3). Deputy Swartzentruber, assigned to the medical wing, responded and noted Ireland was "sweating profusely and seemed anxious." (86-3 at 2). Swartzentruber's training mostly involved weapons and use of force but none for recognition of medical crises. (ECF 87-16 at 2). Swartzentruber confronted Ireland, firing his Taser without waiting for backup. (*Id.*; Op. at 6).

After backup arrived, James said she heard officers order Ireland to turn over and he answered, "I can't. I just got Tased." (95-13 at 3). Gruca said "more than a handful" of officers responded to the cell. (ECF 95-5 at 8, 11) "They were saying you need to stop resisting, put your hands behind your back. And he was like, 'I'm not resisting.'" (*Id.*; Op. at 7). "At the same time, they're tasing him. I was hearing a taser." (ECF 95-5). Gruca said she heard Ireland say he "was trying" and "you could hear the frustration in his words" (*Id.*).

Deputy Wiles reported that Ireland was on his stomach and he lay across Ireland to keep him down. (Op. at 38). He testified when Ireland "lifted me" up and flailed with his arms, he struck Ireland twice in his right rib cage area. (ECF 86-5 at

4). Wiles weighed about 180 pounds as he sat on Ireland's back. (Op. at 38). It could be inferred Ireland was struggling to breathe; Gruca described hearing him gasp for air. (ECF 95-5 at 8). Deputy Schwocho denied Ireland hit anyone, despite the close quarters of the cell. "No, he didn't hit anybody. He was just really resisting." (ECF 99-1 at 10:19-11:10).  He described him as "flailing," "like a fish flopping." (ECF 95-3, at 4, 5 and 10).

Erratic movement, like Ireland's, is a symptom of delirium tremens, of which Plaintiff's correctional medical expert and the medical examiner opined Ireland was then in the beginning stages. (ECF 86-18 at 31:5-31:9; 83-4 at 32:25-33:12; 43:14-16; 83-4 at 32:25-33:12, 43:14-16).

Corporal Sledzinski positioned himself to take control of Ireland's feet. He stated he saw Swartzentruber "drive stun" Ireland in the upper back, shoulder area. (ECF 86-9 at 2; Op. at 39). The officers had trouble handcuffing Ireland and finally needed to use a second set of handcuffs because of his size. (Op. at 39). Once Ireland's hands were cuffed behind him, Sledzinski claimed Ireland "continued to reach and grab" at officers Sledzinski borrowed the Taser from Swartzentruber to drive stun his leg. (ECF 86-9 at 2). Officer Burrows noticed that Ireland had urinated all over himself and the floor during this incident. (Op. at 40).

As Ireland lay in the entryway of the cell, officers kept shouting "stop resisting" and continued to pile on him, even though at that point he was neither

speaking or moving and may not have been breathing. (ECF 97-1 at 2). When Nurse Heavener was told Ireland was unresponsive, he tried to assist but was unable to because of all the officers in the cell. (ECF 95-13 at 4; 83-2 at 12). According to another detainee, Bo Cleveland: "The minute they brought him out on the tier, he was motionless. And they remained on top of him, six or seven officers. I mean they just stayed on top of him. Then they tried to carry him down the steps." (ECF 97-1 at 2).

At this point, no one called the doctor or 911. Once Ireland was dragged out on the catwalk, Nurse Bracy stated she went up to take his vital signs, although no vital signs appear in the medical records for that time. (ECF 95-19 at 18). Sledzinski says Ireland revived and began to "reach and grab." (ECF 86-9 a 2). But as Ireland was moved from cell to cell, Cleveland heard Sledzinski say, "He's dead." (ECF 97-1 at 2).

After checking on Ireland, Nurse Bracy asked Nurse Heavener to call Dr. Gonzalez, to authorize Valium for the seizure but he never answered. (Op. at 8-9). The call log placed these calls at 4 a.m.—almost 30 minutes after Ireland was dragged out of the cell—but that time entry was scratched out and replaced with 3:20 a.m.—before the first deployment of Swartzentruber's Taser at 3:38 a.m. (ECF 95-9 at 1; ECF 83-2 at 12).

Ireland was never administered any drug at the jail. (Op. at 9). After being unresponsive for nearly a half-hour, Lt. Carter was advised to call 911. Ireland was sent to the emergency room where he died. (Op. at 40).

## **ARGUMENT**

The Court should (1) reevaluate Appellant's deliberate indifference claims under the *Kingsley* "objective reasonableness" standard, (2) reverse the judgment on the claims against Dr. Gonzalez even under the subjective fault standard employed by the panel, and (3) reverse the judgment on Appellant's excessive force claims for the "second time period" (*see id.* at 42–43).

I.   **THE *KINGSLEY* "OBJECTIVE REASONABLENESS" STANDARD SHOULD APPLY TO APPELLANT'S DELIBERATE INDIFFERENCE CLAIMS**

    A.   **Even before *Kingsley*, the Supreme Court has never imposed a subjective standard on claims by pretrial detainees.**

The Supreme Court developed the subjective deliberate indifference standard in the unique context of prison litigation under the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court derived that standard from the Eighth Amendment's prohibition of "wanton" punishment and has never applied the standards to a conditions claim by a pretrial detainee. On the contrary, the Supreme Court has drawn a sharp distinction between Eighth Amendment claims by convicted prisoners and Fourteenth Amendment claims by pretrial detainees.

The Supreme Court has long held that the Eighth Amendment's Cruel and Unusual Punishments Clause forbids the "wanton infliction of pain." *State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947). A "wanton" state of mind is—by definition—akin to subjective deliberate indifference. BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences"). In *Estelle v. Gamble*, the Court derived a subjective deliberate indifference standard for medical care claims by convicted prisoners from the Eighth Amendment's prohibition of "wanton" punishment. 429 U.S. 97, 104 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("[O]bduracy and wantonness . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (holding only the "wanton" infliction of pain required "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment"); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment" requiring a "sufficiently culpable state of mind.").

The Supreme Court has never applied a subjective test to a case about treatment in pretrial detention. On the contrary, it has differentiated sharply between treatment of convicted prisoners and pretrial detainees, noting that while the Eighth Amendment prohibits "wanton" punishment of convicted prisoners, the

8

Fourteenth Amendment prohibits *all* punishment of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Court elaborated:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt.

*Id.* at 535 n.16 (citations omitted).

## B. *Kingsley* should be read to impose an "objectively unreasonable" standard on deliberate indifference claims by pretrial detainees.

In light of that distinction, *Kingsley* forbids the contamination of Fourteenth Amendment pretrial detainee jurisprudence with the importation of Eighth Amendment tests designed for convicted prisoners. 576 U.S. at 400. In *Kingsley*, the Supreme Court concluded that Eighth Amendment culpable state of mind rules arising out of the prohibition of "wanton" punishment cannot be extended to pretrial detainees, who have a Fourteenth Amendment right to be free from all punishment. *Id*. "The language of the two Clauses differs," the Court reasoned, "and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all. " *Id*.

Because there is no requirement that a pretrial detainee demonstrate the wanton infliction of pain, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a

9

legitimate governmental objective or that it is excessive in relation to that purpose." *Id*. at 398. Thus, "the appropriate standard for a pretrial detainee's excessive force claim," *Kingsley* held, "is solely an objective one." *Id*. at 397.

In the wake of *Kingsley*, and its clarification of *Bell*, three federal courts of appeal have overturned circuit precedent that previously required a subjective standard of fault for conditions claims brought by pretrial detainees.

In this Circuit, *Gilmore v. Hodges* is such established precedent applying the subjective standard of fault for deliberate indifference claims under the Fourteenth Amendment. 738 F.3d 266 (11th Cir. 2013). Since *Kingsley*, Eleventh Circuit panels have explained—generally briefly—that *Kingsley* does not create a direct conflict with *Gilmore* because *Kingsley* is rooted in the excessive force context. *See, e.g.*, *Johnson v. City of Bessemer*, 741 Fed.Appx. 694, 699 n. 5 (11th Cir. 2018) (per curiam) (quoting *Dang*, 871 F.3d at 1279 n.2 for the proposition that Eighth Amendment decisional law still applies to pretrial detainees' claims of deliberate indifference to medical needs because *Kingsley* is not "squarely on point" with prior panel precedent).

But *Kingsley* does not rely solely on precedent specific to excessive force claims. The *Kingsley* Court explicitly interprets *Bell* to mandate the use of an objective standard for a broad range of claims brought by pretrial detainees: "The *Bell* Court applied [an] objective standard to evaluate a *variety of prison*

10

*conditions*." *Kingsley*, 576 U.S. at 398 (emphasis added) (citing *Bell*, 441 U.S. at 541-43). It explained, "as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail [on a due process claim] by providing only objective evidence." *Id*. In explaining that precedent dictated an objective standard for claims by pretrial detainees, *Kingsley* did not speak specifically of excessive force claims, but rather of "the challenged governmental action" more generally. *Id*.

     *Kingsley*'s reliance on non-force precedent and application beyond the force context is well-recognized by this Court's sister circuits. *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) ("*Kingsley*'s broad reasoning extends beyond the excessive force context[.]"); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (explaining there is "nothing in the logic the Supreme Court used in *Kingsley* that would support this kind of dissection of the different types of claims [excessive force and deliberate indifference] that arise under the Fourteenth Amendment"); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (noting *Kingsley* "did not limit its holding to 'force' but spoke to 'the challenged governmental action' generally"). Each of these circuits recognized the fundamental reality that *Kingsley*'s rejection of a subjective standard turns not on a distinction between force and non-force cases, but on a distinction between the legal status of pretrial detainees and convicted prisoners. *Miranda*, 900 F.3d at 350-52; *Darnell*, 849 F.3d at 34-35; *Castro*, 833 F.3d at 1069-70. Thus, Mr.

11

Ireland had the same legal status at the time of his injury that Mr. Kingsley had when officers allegedly attacked him—both were pretrial detainees and so both shared in the guarantee of the Fourteenth Amendment, not the less generous protection that the Eighth Amendment affords to convicted persons. *See Kingsley*, 576 U.S. at 400-01.

The panel's limitation of *Kingsley* to excessive force cases creates an illogical result: If detainees can win excessive force cases with objective evidence alone but must provide state-of-mind evidence in all other cases, jail staff will enjoy the least deference in excessive force litigation. But the Supreme Court has stated that corrections personnel must have the *most* deference in the excessive force context, where guards must act "quickly and decisively," *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), making split-second decisions "in haste, under pressure, and frequently without the luxury of a second chance," *Whitley*, 475 U.S. at 320.

It is the intentionality of the *conduct* that matters post-*Kingsley*. *See Kingsley*, 576 U.S. at 395–96 (describing "two separate state-of-mind questions" and explaining that the relevant behavior must be intentional while the interpretation of the action is analyzed objectively—subjective proof of intent is not required). The Seventh Circuit addressed this point in *Miranda* applying the objective deliberate indifference standard. Doctors were objectively deliberately indifferent because a "jury could find" they "made the decision" not to transport the

12

plaintiff to the hospital "with purposeful, knowing, or reckless disregard of the consequences." *Miranda*, 900 F.3d at 354. It recognized that inaction—in *Miranda*, the decision not to take the plaintiff to the hospital—was an intentional choice that, after *Kingsley*, must be judged on objective reasonableness. *Id.*

*Farmer* rejected an objective deliberate indifference test only for *Eighth Amendment* claims brought by *convicted prisoners. Farmer*, 511 U.S. at 837-39. The *Farmer* Court had no occasion to opine on the standard for claims brought by pretrial detainees under the Due Process Clause. *Farmer* recognized that there were two types of deliberate indifference standards—an objective standard based on disregarding *obvious* risks and a subjective standard based on disregarding *subjectively known* risks. *See id.* The phrase "'deliberate indifference' is defined objectively in some contexts and subjectively in others. *Id*. at 836–37, 837 nn.5-6, 840. *Farmer* is silent on the standard for pretrial detainees litigating under the Due Process Clause. *Farmer*, 511 U.S. at 837-839.

Confining *Kingsley* to excessive force claims cannot rely on *Farmer*, which, as noted above, took no position on the proper standard for Fourteenth Amendment claims. And though applying an objective deliberate indifference standard would require overruling circuit precedent, that is permissible where there is "an intervening Supreme Court decision only if that decision actually

13

overruled or conflicted with it," as *Kingsley* did here. *United States v. Marte*, 356 F.3d 1336, 1344 (11th Cir. 2004).

On this history, to continue to apply a subjective standard to conditions claims by pretrial detainees is error. This Court should grant rehearing *en banc* and adopt the *Kingsley* test for non-force Fourteenth Amendment claims brought by pretrial detainees. Under such test, Appellant would succeed on the deliberate indifference claims as to Dr. Gonzalez for his failure to treat Ireland with prescribed medication (or any medication) after his dispatch from the hospital, and the nurses and corrections officers for their failure to call 911 when they saw that Ireland was not moving. *Hill v. Dekalb Reg'l Youth Det. Ctr.* , 40 F.3d 1176, 1187 (11th Cir. 1994).

## II.   JUDGMENT AGAINST DR. GONZALEZ SHOULD BE REVERSED EVEN IF THE SUBJECTIVE STANDARD APPLIES

After being arrested with a very high BAC, Ireland was sent by protocol to the hospital for emergency treatment. There, a physician determined that he needed medication for hypokalemia, prescribed him such medication, and instructed him to continue taking the medication as indicated. Ireland was then "cleared" to go to the jail.

When Ireland arrived at the jail, he was denied the prescribed potassium chloride because the jail's health provider—Corizon—had a policy not to honor

prescriptions from other doctors. (Op. at 5). The panel construes the failure of Dr. Gonzalez to honor the prescription—and ensure immediate continuity of treatment for a serious illness—as a difference in medical opinion that is "at worst, negligent." (Op. at 30). But Dr. Gonzalez never exercised any medical judgment— she countermanded the prescription by telephone without reviewing or discussing the medical records. A medical judgment would not be deliberate indifference. *See Engelleiter v. Brevard Cnty. Sheriff's Dep't*, 290 F. Supp. 2d 1300, 1308 (M.D. Fla. 2003) ("[M]atters for medical judgment, such as whether to order an X-ray or like measure, do not represent cruel and unusual punishment even if the action or lack thereof evinces medical malpractice."). But by not making *any* medical judgment and interfering with treatment only to comply with Corizon's policy— which policy is evidence of deliberate indifference, *see Kister v. Quality Corr. Health Care*, No. 5:16-cv-1406-KOB-HNJ, 2018 WL 6174693, at *5 (N.D. Ala. Mar. 12, 2018)—Dr. Gonzalez's actions constituted deliberate indifference under *Estelle*. *See Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (relying on *Estelle* to determine that allegations of failure to administer prescribed medication upon return to jail could not be resolved on directed verdict).

15

### III.   MATERIAL FACTS REMAIN IN DISPUTE ON IRELAND'S CLEARLY ESTABLISHED RIGHT TO BE FREE FROM EXCESSIVE FORCE UNDER *KINGSLEY*

Last, the panel committed error in making the "close[] call" (Op. at 42) to determine that the second episode—where several officers piled up on Ireland and did not get off him despite visible urine all over him and the floor and evidence that he was struggling, gasping for breath, and telling officers that he was trying to comply—should not go to a jury. Although the need for *some* force may have been apparent, there is conflicting testimony as to the reasonableness of force. And there is evidence of consciousness of guilt—in the aftermath, one of the officers told another to "haul ass" out of the area because he was on probation. (ECF 97-1 at 2).

The panel—and district court—committed error by weighing the evidence and drawing inferences from the facts that would suggest diminishing the credibility of Appellant's witnesses and evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The panel also held that Appellant did not meet his burden as to showing that the force used against Ireland violated a clearly established right in 2015. (Op. at 45-46). But it was clearly established in 2015 that the repeated use of a taser on an unresisting arrestee constituted excessive force. *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997). In fact, any force after Ireland stopped resisting would have been disproportionate to the need.

16

*Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008). And here there are facts in dispute as to whether Ireland was still resisting while the officers continued to use force: officers said he was biting and kicking; other detainees stated he sounded like he was gasping for air under the weight of the officers piled on him. Others testified that Ireland was "flopping" and "flailing"—and possibly not resisting at all, but in visible medical distress. There is a "reasonable dispute of material fact over whether the defendant[s] violated the plaintiff's clearly established constitutional rights"—not whether there is a clearly established constitutional right. *O'Rourke v. Hayes*, 378 F.3d 1201 (11th Cir. 2004) (citing *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002)). On this basis, the panel's opinion should be reversed.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing, adopt the objective deliberate indifference standard, and reverse the judgment below.

I HEREBY CERTIFY a true and correct copy of the foregoing was served electronically on November 27, 2022, and by mail on:

Summer M. Barranco, Esq.          Gregg A. Toomey, Esq.
Purdy, Jolly, Giuffreda, Barranco & Jisa    The Toomey Law Firm LLC
2455 East Sunrise Blvd., Suite 1216     1625 Hendry Street, Suite 203
Fort Lauderdale, FL 33304          Fort Myers, FL 33901

17

Respectfully submitted,

s/JAMES V. COOK
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080/fax (850) 561-0836
FL Bar No. 966843

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains no more than 3879 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared with Microsoft Word 2016 using 14 pt. Times New Roman.

*/s/ James Cook*